NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NAIM ALLEN | No. 23cr300 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN**, **District Judge.**

Defendant Naim Allen was arrested after he allegedly went to his ex-girlfriend's house, threatened to kill her, pulled out a handgun, fired into the air, and fled. An indictment charges Defendant with possessing MDMA with intent to distribute, and possession of a firearm by a felon. Defendant moves to suppress the results of a search of a fanny pack (the "Bag"), where the MDMA was found. D.E. 47 (the "Motion to Suppress," or "MTS").[1] Defendant also moves to dismiss the felon-in-possession charge as a Second Amendment violation. D.E. 49 ("Motion to Dismiss," or "MTD"). The Government opposes both motions. D.E.s 54 ("MTS Opp'n"), 52 ("MTD Opp'n"). For the reasons below, the Court will **DENY** both motions.

I.   BACKGROUND[2]

   A.   Defendant's Prior Convictions

On July 24, 2015, Defendant was convicted of attempted robbery in the 2nd degree, N.J.S.A. 2C:5-1, 2C:15-1, and sentenced to three years' imprisonment. MTS Opp'n at 3. During his guilty plea, Allen admitted that he "grabbed" and "restrained" his victim. *Id.* On April 1, 2016, Allen was convicted of unlawful possession of a handgun, N.J.S.A. 2C:39-5B, and sentenced to

---

[1] D.E. 47 amends the initial motion to suppress at D.E. 45.
[2] These facts are drawn from the body-worn camera footage, a 911 call, Elizabeth Police Department ("PD") radio recordings, and Elizabeth PD reports, all of which may be relied upon for a suppression motion. *See United States v. Raddatz*, 447 U.S. 667, 679 (1980).

three years' incarceration. *Id.* On April 1, 2016, Allen was convicted of theft from the person of another, N.J.S.A. 2C:20-23(2)(D), and sentenced to three years' imprisonment. *Id.* Allen completed all custodial portions of his sentences for these offenses, and was serving a term of probation for a misdemeanor theft conviction when he was arrested on September 3, 2021. *Id.*

      **B.**      **Instant Allegations**

On September 3, 2021, complaining witness S.J. called 911. Opp'n at 1. S.J. reported that Defendant was outside of S.J.'s Elizabeth, New Jersey home making threats and holding a gun. *Id.* S.J. told the 911 operator that Defendant fired a shot into the air. *Id.* S.J. provided a description: a dark-skinned male with blonde-tipped dreadlocks, wearing a black shirt and black pants, walking with a female down Flora Street towards the Flora motel.

Elizabeth PD officers encountered an individual matching S.J.'s description (Defendant) approximately one block from the location that S.J. had provided. *Id.* at 2. As the officers approached Defendant, they observed him reach into the Bag, which was slung on his chest. *Id.* The officers approached Defendant with lights and sirens and exited their vehicle with weapons drawn. *Id.*

After handcuffing Defendant, the officers asked if his name was "Naim Allen"; Defendant responded that he was "Nazir." *Id.* Believing Defendant to be armed, officers cursorily searched the Bag and surroundings with negative results. *Id.* The officers confined Defendant in their police car. *Id.*

Once Defendant was secured, the officers searched between the location that S.J. had reported and the location where officers eventually found Defendant. *Id.* Officers found a 9mm handgun, previously reported as stolen, containing three rounds (the "Gun"). *Id.* Officers searched

the Bag again and recovered a photo ID for "Naim Allen," 114 pills of MDMA,³ a black face mask, transparent gloves, two Ziploc bags of suspected marijuana, and $429 in United States currency. *Id.* Upon transport to the precinct, officers inventoried Defendant's property. *Id.* Back at S.J.'s residence, Elizabeth PD recovered one spent 9mm shell casing, which lab analysis revealed to have been discharged from the Gun. *Id.*

On April 13, 2023, a federal grand jury returned a two-count indictment (the "Indictment") charging Defendant with one count of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), and MDMA possession with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(C).

### C. Motions

Plaintiff filed two motions. The MTS seeks to suppress the Bag's contents, arguing that officers' search of the Bag violated the Fourth Amendment. And the MTD seeks to dismiss the § 922(g)/felon-in-possession charge, arguing that § 922(g)(1) is facially unconstitutional and unconstitutional as applied to Defendant. D.E. 49 ("Motion to Dismiss" or "MTD"). The Government opposes both. D.E. 55 ("Opp'n). Defendant has not replied.⁴

## II.   ANALYSIS

### A.   The Motion to Suppress Will Be Denied Pursuant to the Inventory Search Exception to the Warrant Requirement

The Fourth Amendment affords protections against "unreasonable searches and seizures" of a person's "effects." U.S. Const. amend IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "Nevertheless, because the ultimate touchstone of the Fourth Amendment is

---

³ Subsequently confirmed by a lab.
⁴ Because Defendant has not replied, and because no material facts are in dispute, no hearing is necessary.

3

'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 (2006). Such exceptions are justified where "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394 (1978) (cleaned up).

Defendant's motion focuses on the search-incident-to-arrest exception. Defendant argues, in substance, that Defendant was already handcuffed and confined in a police car when officers searched the bag. MTS at 4. Thus, Defendant argues, the fruits of the search—the drugs in the bag—should be suppressed because "there was no reasonable possibility that [Defendant] could have accessed a weapon or destructible evidence from the bag." *Id.*

Indeed, as Defendant argues, "a search is permissible incident to a suspect's arrest [only] when, under all the circumstances, there remains a reasonable possibility that the arrestee could access a weapon or destructible evidence in the container or area being searched." *United States v. Shakir*, 616 F.3d 315, 321 (3d Cir. 2010). The Government does not contest Defendant's argument that "the search of the interior of the fanny pack was not conducted until after [Defendant] had been handcuffed, removed from the scene, and confined to the back of a police car." MTS at 4. Nor does the Government contest that "there was no reasonable possibility that [Defendant] could have accessed a weapon or destructible evidence from the bag." *Id.* Thus, the search-incident-to-arrest exception does not justify the search of the Bag. *Cf. Shakir*, 616 F.3d 315, 321 (3d Cir. 2010) (search of bag justified because, though defendant was handcuffed and guarded, the bag remained at defendant's feet and thus "there remained a sufficient possibility that Shakir could access a weapon in his bag[.]").

4

As the Government argues, however, it is instead the inventory search exception—or more specifically, the Third Circuit's extension of that exception—that justifies the search. Simply stated, police may, without a warrant, search any container or article in a person's possession as part of the routine administrative procedure incident to incarcerating an arrested person. An inventory search of an arrestee's effects may be excepted from the warrant requirement because it serves "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372 (1983); *see also Illinois v. Lafayette*, 462 U.S. 640, 643 (1983).

The Government bears the burden of demonstrating the reasonableness of its actions. *See United States v. Jeffers*, 342 U.S. 48, 51 (1951) (citations omitted). If agents acted in bad faith or solely for investigatory purposes, the evidence may be suppressed. *See Wells*, 496 U.S. at 4. A lawful inventory search must be "'conducted according to standardized criteria' or established routine, consistent with the purpose of a non-investigative search." *United States v. Mundy*, 621 F.3d 283, 287–88 (3d Cir. 2010) (citation omitted). The search "must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). However, there is no requirement that the inventory procedures be in writing. *United States v. Felder*, Crim. No. 07-540, 2008 WL 2051967, at *4 (E.D. Pa. May 13, 2008) (the "police department's policy and procedure need not be formally written so long as it is standardized").

"When a person is arrested in a place other than his home," it may be appropriate for the arresting officers to "impound the personal effects that are with [the Defendant] at the time to ensure the safety of those effects or to remove nuisances from the area." *United States v. Brantley*, No. CR 19-00092, 2021 WL 1921584, at *3 (D.N.J. May 13, 2021) (quoting *United States v. Perea*, 986 F.2d 633, 643 (2d Cir. 1993) (citation omitted)). Indeed, "when a valid arrest has been

made in a public place, which requires that the arrested person be transported from the scene, police may search any luggage that the person has in his possession at the time of the arrest, and which must accompany him to the police station, prior to transporting it." *United States v. Matthews*, 532 F. App'x 211, 224 (3d Cir. 2013).

"[S]earches of this type are justified by concerns for officer safety and will be valid whether or not an officer has probable cause to believe the evidence contains contraband." *Id.* at 224 (citing *Lafayette*, 462 U.S. at 646) ("It is immaterial whether the police actually fear any particular package or container; the need to protect against [safety] risks arises independent of a particular officer's subjective concerns."), and then citing *Brigham City*, 547 U.S. at 403 ("The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.")).

Here, the Court finds the search of the Bag justified. Police were called to the scene after a witness reported a gunshot fired by an individual matching Defendant's description and arrested Defendant for, among other crimes, possession of a firearm and terroristic threats. Officers also had reason to believe, because Defendant matched the shooter's description, that Defendant provided a fake name. And finally, because the officers had already detained Defendant and found a gun by the time of their second search of the Bag, it was clear that officers were planning to transport the Bag, together with Defendant, to the precinct. *See United States v. Henderson*, 439 F. App'x 56, 58 (2d Cir. 2011) (upholding search of vehicle, including recovery of wallet in vehicle, where arresting detective was "responsible for the prisoner and all of his property during an arrest").

Accordingly, the Court will **DENY** Defendant's motion to suppress.

6

B.  **Defendant's Motion to Dismiss Will Be Denied Because § 922(g) Does Not Violate the Second Amendment**

Defendant does not contest the existence of his prior convictions. Instead, Defendant argues that the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Third Circuit's en banc decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023), and subsequent district court opinions mandate a finding that § 922(g)(1) is unconstitutional on its face and as applied to Defendant. Specifically, Defendant argues that § 922(g)(1) violates the constitution by imposing an effective lifetime ban on him, and others similarly situated, based only on their felon status, *i.e.*, that they were convicted of crimes punishable by a year or more in prison, without any historical justification for doing so.

1.  *Second Amendment jurisprudence before and after* Bruen

The Second Amendment provides that a "well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Until recently, many courts, including the Third Circuit, required a two-step means-end analysis in Second Amendment cases. First, courts would ask whether "the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). If so, courts would "evaluate the law under some form of means-end scrutiny. If the law passe[d] muster under that standard, it [was] constitutional." *Id.*

In *Bruen*, the Supreme Court eliminated any means-end analysis and clarified the framework that courts should follow. 597 U.S. at 20. Now, "[t]o justify its regulation, . . . the [G]overnment must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second

7

Amendment's 'unqualified command.'" *Id.* at 17 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)). Section 922(g)(1) clearly regulates possession of a firearm—it is effectively a lifetime ban on firearm and ammunition possession for felons. Thus, the Court must apply *Bruen*'s framework.

*Bruen* mandates two steps.[5] First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 591 U.S. at 17. And second, if the Second Amendment covers the conduct, the "presumption" that the conduct is constitutionally protected can be rebutted only if the Government is able to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24.

Many defendants have argued that *Bruen* or *Range* rendered § 922(g)(1) presumptively unconstitutional. However, most jurists to address the issue have emphasized that *Bruen* does not disturb any part of *Heller* or *McDonald* pertaining to restrictions that may be imposed on the possession or carrying of guns, including such restrictions on convicted felons. *Bruen*, 597 U.S. at 72 (Alito, J., concurring). For example, Justice Kavanaugh and Chief Justice Roberts reassert that "'[n]othing in [*Bruen*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . .'" *Id.* at 81 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626 and *McDonald*, 561 U.S. at 786). Likewise, Justice Alito emphasized that *Bruen* does not "disturb[] anything that we said in *Heller* or *McDonald* . . . about restrictions that may be

---

[5] Even courts characterizing *Bruen*'s framework as a "one-step, burden-shifting approach" recognize that the "approach consists of *first* determining whether the Second Amendment's plain text covers [the charged] conduct, and *then* determining whether [the government has] met [its] burden of demonstrating that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 298 (N.D.N.Y. 2022) (emphasis added).

8

imposed on the possession or carrying of guns," *id.* at 72 (concurring), and he reiterated that *Bruen*'s holding is limited to the rights of "law-abiding people," *id.* at 76 (concurring); *see United States v. Canales*, No. 21-226, 2023 WL 8092078, at *3 (E.D. Pa. Nov. 20, 2023) ("[S]ix Justices (Roberts, Alito, Kavanaugh, Breyer, Sotomayor, and Kagan), through concurring and dissenting opinions, [have] signaled their understanding that the majority opinion in *Bruen* did not call into question the constitutionality of the § 922(g)(1).")

It is true that after *Range*, a Second Amendment challenge to § 922(g)(1)'s constitutionality, as applied to a particular defendant, is "nonfrivolous." *United States v. Perez*, No. 22-55, 2024 WL 579115, at *2 (D. Del. Feb. 13, 2024). There are, in other words, conceivable scenarios—as in *Range*—in which the Second Amendment could be found unconstitutional as to a particular individual's circumstances and background. But *Range* is considered an "outlier" because he

> had been convicted in 1995 of a non-violent misdemeanor (considered to be a felony for federal purposes due to the maximum sentence being five years imprisonment), served a probationary sentence, paid his financial obligations caused by the conviction, and otherwise lived without contact with the criminal justice system for more than twenty years. He then came to court so that he could purchase a long gun to go hunting or a shotgun for self-defense at home.

*United States v. Cook*, No. 22-37, 2023 WL 8433510, at *2 (D. Del. Dec. 5, 2023) (citing *Range*).

This distinguishes it from challenges like this one, brought as a motion to dismiss felon-in-possession charges by a defendant with numerous, and recent, criminal convictions evidencing a history of antisocial or dangerous behavior. Indeed, the Third Circuit itself described *Range* as a "narrow" holding. 69 F.4th at 106. This Court likewise construes *Range* narrowly, *i.e.*, limiting it to the same, or reasonably similar, circumstances of an individual petitioner with a single, decades-old non-violent felony conviction affirmatively requesting to purchase a long gun, shotgun, or

9

other gun "'in common use' today for self defense." *Bruen*, 597 U.S. at 3 (quoting *Heller*, 554 U.S. at 627).

Most courts to address the issue have done the same, rejecting post-*Range* "as-applied" challenges to § 922(g)(1) prosecutions. "Those courts have found that there is a historical tradition that legislatures have disarmed those individuals thought to be dangerous or a threat to public safety if armed." *Cook*, 2023 WL 8433510, at *2 (citations omitted). Indeed, the Third Circuit recently rejected, albeit in a non-precedential decision, a Second Amendment challenge to § 922(g)(1).[6] In *United States v. Hall*, No. 23-1430, 2024 WL 510512, at *2 (3d Cir. Feb. 9, 2024), the Circuit considered the defendant's argument that "the Second Amendment bars punishing him for carrying a gun," and held that "[n]othing in [*Range*]," which involved a "single, decades-old conviction of minor welfare fraud," "suggests that it applies to someone with [defendant's] long, serious criminal history." *Id.*

This Court does not, however, rest on the determinations of other courts; it also independently finds that § 922(g)(1) is not facially unconstitutional, or unconstitutional as applied.

   2.   *The Second Amendment does not cover Defendant's conduct*

Within *Bruen*'s first step—determining whether the Second Amendment's text "covers an individual's conduct," 597 U.S. at 17—are two sub-issues: the individual and the conduct. First, the individual: as *Range* made clear, the Second Amendment applies to all Americans, not only to law-abiding citizens. 69 F.4th at 101. Thus, it applies to Defendant.

---

[6] Additionally, albeit in a different factual and legal context, the Third Circuit has re-affirmed in a precedential opinion that "the government may confiscate guns from those who have been convicted of serious crimes or committed dangerous acts." *Frein v. Penn. State Police*, 47 F.4th 247, 256 (3d Cir. 2022).

The next question is whether the Second Amendment applies to an individual's *conduct*. The parties disagree on the conduct at issue. Defendant argues that the overarching conduct, defined broadly—possession of a handgun—is presumptively protected by the Second Amendment. MTS at 10. The Government counters that Defendant's conduct—possession of a *stolen* handgun—cannot possibly be conduct protected by the Second Amendment. MTS Opp'n at 8-15.

The Government notes, accurately, that some courts have upheld the constitutionality of 18 U.S.C. § 922(j), which provides that "[i]t shall be unlawful for any person to . . . possess . . . any stolen firearm . . . knowing or having reasonable cause to believe that the firearm . . . was stolen." *See United States v. Gore*, No. 2:23-CR-04, 2023 WL 2141032, at *4 (S.D. Ohio Feb. 21, 2023); *United States v. Lewis*, 682 F. Supp. 3d 1038, 1059 (S.D. Ala. 2023). However, Defendant is not charged with knowingly possessing a stolen handgun, only possession based on his felon status.

Nevertheless, Defendant does not allege, or even hint at, any constitutionally protected purpose for possessing a stolen handgun, which was found, loaded with three rounds, just thirty feet from where Defendant was arrested and on the sidewalk he had taken from his ex-girlfriend's house. *See* Opp'n at 2. He was also serving a term of probation at the time, further indicating that his conduct was not protected by the Second Amendment. *See United States v. Shaw*, No. CR 22-1 (JEB), 2023 WL 3619416, at *7 (D.D.C. May 24, 2023) ("[A]ny Second Amendment right applicable here may be limited during the period of probation, just as other myriad constitutional rights are.").

However, even assuming that the Second Amendment encompasses Defendant's charged conduct, there is nevertheless no basis to dismiss what Defendant *is* charged with as unconstitutional. The Government has adequately demonstrated that the United States has a

historical tradition of disarming those, like Defendant, deemed dangerous based on their prior behavior.

> 3. *Section 922(g)(1), as applied, is constitutional because this nation has an historical tradition of disarming those deemed dangerous*

Where the Second Amendment has been found to apply to the charged conduct, the Government "bears the burden of proof: it 'must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Range*, 69 F.4th at 101 (quoting *Bruen*, 597 U.S. at 19).[7] Here, the Government has met its burden to show that § 922(g)(1) is consistent with "this Nation's historical tradition of firearm regulation" and does not violate the Second Amendment because disarming people posing a danger to society is deeply rooted in our country's legal traditions. *Bruen*, 597 U.S. at 17.

"This Nation has a historical tradition of disarming dangerous individuals and those who would endanger the public's safety if allowed a firearm." *Velazquez*, 2024 WL 49690, at *13 (citing *Koons v. Platkin*, No. 22-7464, 2023 WL 3478604, at *19-24 (D.N.J. May 16, 2023); *accord Range*, 69 F.4th at 111-12 (Ambro, J. concurring, joined by Greenaway, Jr., J., and Montgomery-Reeves, J.) (explaining Founding era disarmament laws "were measures driven by the fear of those who, the political majority believed, would threaten the orderly functioning of society if they were armed," and "[c]ertain regulations contemporaneous with the Fourteenth Amendment's ratification reaffirm the familiar desire to keep arms from those perceived to threaten the orderly functioning of society"); *see also United States v. Smith*, No. 23-8, 2023 WL 6795807, at *4 (W.D. Pa. Oct.

---

[7] This has been criticized as, among other things, a "historical Where's Waldo." *United States v. Love*, 647 F. Supp. 3d 664, 670 (N.D. Ind. 2022); *see also Bullock*, 2023 WL 4232309, at *2 (quoting Gordon S. Wood, *The Supreme Court and the Uses of History*, 39 Ohio N.U. L. Rev. 435, 446 (2013)) ("Yet it appears that the Court continues to engage in 'law office history'—that is, history selected to 'fit the needs of people looking for ammunition in their causes'—in Constitutional interpretation.").

12

13, 2023) ("While . . . there is no historical tradition from the colonial era or early Republic categorically disarming those merely convicted of crimes ([particularly those like Range]), there is a long history of disarming people who pose a danger to society.").

Courts in the Third Circuit have, even after *Range*, found almost uniformly that bans on possession of firearms by a person previously convicted of crimes is constitutional.[8] This includes a variety of predicate convictions for a defendant's § 922(g)(1) charge imputing some level of dangerousness or other basis for distrust including, as relevant here, convictions similar to Defendant's.[9] These cases are consistent with the Third Circuit's caution that *Range*'s holding was a "narrow one" limited to the particular, distinguishable facts present in that case: a civil petition for possession of a weapon in the home by someone who had completed their sentence for a non-"dangerous" felony. 69 F.4th at 106.

This Court need not retread ground well-worn by the many other thorough opinions addressing the issue. The Court is persuaded, however, by the Government's myriad authorities, spanning numerous historical periods from pre-Founding to post-Civil War, highlighting laws that disarmed those deemed "dangerous" or "distrusted." MTS Opp'n at 15-21. Considering the

---

[8] *United States v. Stone*, No. 22-445, 2023 WL 8832438, at *1 n.1 (E.D. Pa. Dec. 21, 2023) (collecting E.D. Pa cases); *United States v. Bost*, No. 21-30, 2023 WL 7386567, at *2 (W.D. Pa. Nov. 8, 2023) (collecting W.D. Pa and M.D. Pa cases); *United States v. Hawkes*, No. 22-111, 2023 WL 8433758 at *7 (D. Del. Dec. 5, 2023).

[9] *United States v. Morales*, No. 22-161, 2023 WL 6276672, at *1 n.1 (M.D. Pa. Sep. 26, 2023) (burglary); *United States v. Wise*, No. 21-511, 2023 WL 6260038, at *4 (W.D. Pa. Sep. 26, 2023) (prior convictions for drugs, unlawful weapons possession, and endangering the welfare of a child); *United States v. Woznichak*, No. 21-242, 2023 WL 7324442, at *6 (W.D. Pa. Nov. 7, 2023) (felony drug trafficking offenses); *Porter v. United States*, Civil Action No. 22-6199, 2023 WL 6366273, at *5 (D.N.J. Sep. 28, 2023) (same); *Bost*, 2023 WL 7386567, at *2 (terroristic threats); *United States v. Johnson*, No. 23-77, 2023 WL 6321767, at *1 (E.D. Pa. Sept. 27, 2023) (carrying a firearm without a license and receiving stolen property); *United States v. Davis*, No. 23-60, 2023 WL 6810249, at *6 (M.D. Pa. Oct. 16, 2023) (unlawful possession of a sawed-off shotgun and felony larceny); *United States v. Robinson*, No. 22-362, 2023 WL 7021320, at *1 (M.D. Pa. Oct. 25, 2023) (grand theft of a motor vehicle).

significant body of historical analogues, precedent, and persuasive authority, the Court finds that § 922(g)(1), as applied, is constitutional based on Defendant's predicate convictions.[10]

It is true that some courts within this Circuit have dismissed § 922(g)(1) charges after finding that the Government failed to meet its burden to show a historical tradition of disarming felons. *See United States v. Quailes*, No. 21-176, 2023 WL 5401733 (M.D. Pa. Aug. 22, 2023) and *Harper*, 2023 WL 5672311. The same was found in Judge Reeves' thorough *Bullock* decision. 2023 WL 4232309.[11] However, this Court is not bound by those cases, and does not find them persuasive.

Notably, unlike in those cases, the Government has provided ample authority[12] here to affirmatively prove that § 922(g)(1) "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19. In contrast, Judge Reeves in *Bullock* observed that the Government had submitted only a "three-and-a-half page response limit[ing] *Bruen* to its facts." 2023 WL 4232309, at *4; *see also Harper*, 2023 WL 5672311, at *12 ("[T]he Government makes no effort to identify a historical analogue that involves the criminalization of firearm possession for those convicted of drug trafficking offenses (or any kind of drug-related or trafficking-related offense for that matter) or robbery offenses.").

Accordingly, this Court will **DENY** the as-applied Second Amendment challenge.

---

[10] The parties dispute whether this Court should examine the conduct underlying Defendant's attempted robbery conviction. *Compare* MTS at 17 and MTS Opp'n at 3, 22. Ultimately, the Court need not resolve this dispute because violence is not the *sine qua non* of dangerousness. Rather, "the government may confiscate guns from those who have been convicted of *serious crimes* or committed *dangerous acts*." *Frein*, 47 F.4th at 256 (emphases added).

[11] The Court also notes the recent Ninth Circuit opinion in *United States v. Duarte*, No. 22-50048, 2024 WL 2068016 (9th Cir. May 9, 2024). There, too, the Government did not adequately discuss whether that defendant's prior convictions for drug possession and evading a peace officer "trace[d] back to an analogous, Founding-era predecessor." *Id.* at *24.

[12] Nor has Defendant replied to challenge that authority.

*4.    Because § 922(g)(1), as applied, is constitutional, any facial challenge also fails*

A facial challenge is "the most difficult challenge to mount successfully" because "the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).  Because there is no demonstration that § 922(g)(1) is unconstitutional as applied, the facial challenge must fail.  *United States v. Mitchell*, 652 F.3d 387, 415 (3d Cir. 2011) ("Because the statute is constitutional as applied to defendant, he has not shown that there is no set of circumstances under which the statute may be applied constitutionally.") (cleaned up); *see also Velazquez*, 2024 WL 49690, at *14.

### III.    CONCLUSION AND ORDER

For the reasons above, it is

**ORDERED** that Defendant's motion to suppress (D.E.s 45, 47) and motion to dismiss (D.E. 49) are **DENIED**.

June 10, 2024

Evelyn Padin, U.S.D.J.